**Eva A. HALL, Administratrix of the Estate of Albert B. Hall, Defendant, Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Plaintiff, Appellee.**

**No. 5057.**

United States Court of Appeals First Circuit.

May 8, 1956.

Sherwood Aldrich, Brunswick, Me., for appellant.

John D. Leddy, Portland, Me., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a declaratory judgment of the United States District Court for the District of Maine adjudging a policy of automobile liability insurance issued by the plaintiff, Allstate Insurance Company, to the defendant, William F. Clements, null, void, and of no force and effect, and permanently enjoining the defendant, Eva A. Hall, Administratrix, from bringing any action, either at law or in equity, against Allstate arising out of the injuries to and death of her deceased husband, Albert B. Hall. Federal jurisdiction rests upon the diversity of the citizenship of the parties and an adequate amount in controversy between them. 28 U.S.C. § 1332(a) (1).

The following facts are not in dispute.

The defendant Clements, early in January 1952, at that time living in Maine, filled out and mailed an application which he had obtained from the plaintiff Allstate, an Illinois corporation, for a policy of liability insurance covering his Buick automobile. On this application he answered "No" to the question: "Has any automobile license or permit to applicant or to any of his household to drive an automobile ever been suspended, revoked, or refused?" This answer was false. Indeed, Clements admitted at the trial that it was false, for in October 1950, while he was living in Massachusetts, his license to drive had been suspended for a year by the Registrar of Motor Vehicles of Massachusetts as a consequence of his conviction in that Commonwealth for operating a motor vehicle while under the influence of intoxicating liquor.[1]

---

1. On the application Clements also erroneously answered "No" to the question whether he was sole owner of the automobile. Allstate does not rely upon the falsity of this statement as ground for relief. But defendant argues that the falsity of this answer shows that Allstate did not rely on *any* misrepresentation in

Allstate in due course issued the policy in suit to Clements covering him for one year. On the face of this policy, immediately below the heading, it is stated that Allstate entered into its agreement with the named insured "In reliance upon the Declarations on the Supplement Page * * *" and, in paragraph 7 of the supplement page appears the statement:

"During the past two years, with respect to the named insured or to any member of his household, no insurer has cancelled or refused any automobile insurance nor has any license or permit to drive an automobile been suspended, revoked or refused."

Furthermore, on page three of the policy under the heading "Effect of policy acceptance," it is provided:

"By acceptance of this policy the named insured agrees that the Declarations on the Supplement Page are his agreements and representations, and that this policy embodies all agreements, relating to this insurance, existing between himself and Allstate or any of its agents."

About three days after the policy was issued Allstate asked an independent agency for a report on Clements' personal driving habits, and the agency recommended him as an insurance risk.

During the policy year, on November 21, 1952, Clements, while operating his car in Brunswick, Maine, was involved in a collision with a car driven by one Fitzgerald in which Albert B. Hall was a passenger. Both drivers were seriously injured, both cars were severely damaged, and Hall was killed.

Allstate received prompt notification of the accident, and by December 11 its agent had negotiated a settlement with Fitzgerald for his personal injuries and property damages, had paid him the amount agreed upon and had taken his full release. Allstate also at about this time began negotiations for a settlement with counsel representing Mrs. Hall as Administratrix. During these negotiations Allstate raised no question of coverage, but, in accordance with its practice in cases of serious injury or death, it started to investigate the history of its insured. This investigation, perhaps due to an administrative slip-up of some kind, did not begin until February 3, 1953, but it soon brought Clements' previous Massachusetts address to light. Negotiations with Mrs. Hall's counsel continued through February and into early March and on March 13 Allstate first learned that Clements' license to drive had been suspended in Massachusetts for drunken driving. On March 17 it received official notification of that fact and its agent promptly notified Mrs. Hall's counsel that Allstate disclaimed any liability under its policy.

Hall at once brought suit in Maine against Clements, who notified Allstate of the suit, but it disclaimed liability under the policy and refused to defend. In this suit Mrs. Hall recovered a judgment against Clements in the amount of $10,364.90.

The District Court specifically found that Clements induced Allstate to issue its insurance policy by his false and fraudulent concealment of the suspension of his driver's license in Massachusetts. This finding cannot be successfully challenged in this court and neither can the District Court's conclusion that Clements' fraud constituted a breach of the condition set forth in paragraph 7 of the supplement page of the policy quoted above on the basis of which the policy was issued. The District Court also found that Allstate had not lost its right to assert this policy defense by either waiver or estoppel. We have nothing to add to that court's discussion of these matters. The serious question in this case is whether Allstate is prevented from disclaiming its liability on the policy by §§ 261 and 262 of Chapter 56 of

the application, for it would not have issued the policy if it had believed this particular answer. This argument is not persuasive, and we pay no further attention to it.

the Revised Statutes of Maine 1944, now Revised Statutes of Maine 1954, Chapter 60, §§ 302 and 303.

The first section of the statute just referred to reads:

"Sec. 261. *Liability of insurance company absolute when loss occurs.* —The liability of every company which insures any person, firm or corporation against accidental loss or damage on account of personal injury or death or on account of accidental damage to property shall become absolute whenever such loss or damage, for which the insured is responsible, occurs: and the rendition of a final judgment against the insured for such loss or damage shall not be a condition precedent to the right or obligation of the insuring company to make payment on account of such loss or damage."

The last part of the above section following the semi-colon clearly bans the old indemnity type of insurance contract, which only indemnified the insured against loss and hence required as a condition precedent to the insurer's liability that the insured satisfy a judgment obtained against him for a loss covered by the insurance contract. Its obvious purpose was to remedy the injustice to the injured person, and to the insured also, which resulted under the old indemnity type of contract when the insured was too impecunious to satisfy a judgment obtained against him or went into bankruptcy or was judgment-proof for any reason. In short, it made an insurer's obligation depend upon an insured's liability, not upon his liability plus his solvency. This seems clear, the District Court so held, and indeed the parties do not contend otherwise. Their disagreement is as to the meaning of the first part of the section.

The appellee Allstate analyses this part of the statute phrase by phrase in such a way that it has no application to the facts of this case. On the other hand the defendant-appellant Hall (the defendant Clements did not appeal) contends that the statute, in addition to transforming contracts of indemnity insurance into contracts of liability insurance, makes an insurer's liability absolute as of the date of accident even though its policy might have been voidable before that date.

There would be force in her argument if the section were to be construed standing alone. But that is not the case for the section immediately following provides:

"Sec. 262. *Application of insurance money in cases after final judgment; company entitled to notice of accident or injury; bill not to be brought until 20 days after final judgment; exceptions.* Whenever any person, administrator, executor, guardian, firm or corporation recovers a final judgment against any other person, firm or corporation for any loss or damage specified in the preceding section, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a bill in equity, in his own name, against the insuring company to reach and apply said insurance money; provided that when the right of action accrued the judgment debtor was insured against said liability, and that before the recovery of said judgment the insuring company had had notice of such accident, injury, or damage; provided also that the insuring company shall have the right to invoke the defenses described in this section in said equity proceedings. None of the provisions of this paragraph and the preceding section shall apply:

\*      \*      \*      \*      \*

"VI. When there is fraud or collusion between the judgment creditor and the insured.

"No bill in equity shall be brought against an insurance company to reach and apply said insurance money until 20 days shall have elapsed

from the time of the rendition of the final judgment against the judgment debtors."

This statute gives any person holding a final judgment against another for a loss covered by insurance the right, under certain conditions as to notice of injury and time of suit, to proceed directly against the insurer to reach and apply the "insurance money" to the satisfaction of his judgment. But it is not merely a procedural statute for it permits an insurer in such a proceeding to assert certain specified substantive defenses. And it seems hardly conceivable that the Maine legislature would give an insurer substantive defenses in a suit to reach and apply which it could not assert if it were proceeded against indirectly as a trustee or garnishee. We think an insurer must have the same defenses in either situation. So the question presented is whether the language of paragraph VI—"When there is fraud or collusion between the judgment creditor and the insured,"—includes within its meaning a fraud perpetrated by an insured upon his insurer before the happening of an accident within the coverage of the policy but not discovered until afterward.

There does not appear to be any Maine authority directly in point but the District Court answered this question in the affirmative. It thought that a legislative intent to foreclose an insurer from asserting such a traditional defense as fraud in the inception of the contract of insurance ought not to be inferred in the absence of clear and unequivocal language. And, finding support for its view in a dictum of the Supreme Judicial Court of the State of Maine in Medico v. Employers' Liability Assurance Corp., 1934, 132 Me. 422, 172 A. 1, it concluded that, since "fraud" is not synonymous with "collusion," paragraph VI should be read as though a comma had been put after the word "fraud." We agree with these views.

In the Medico case the insurer had defended the original tort action against its insured, and lost. Then it sought to defend a direct action against it to reach and apply the insurance proceeds on the ground that its insured by false testimony in the tort action had broken the cooperation clause of the policy. The court found no evidence to support a finding of fraud, collusion or lack of cooperation by the insured. Its other statements are, therefore, dicta. But the court nevertheless said on page 426 of 132 Me., on page 3 of 172 A.:

"Section 180, c. 60 R.S.1930,[2] enumerates certain defenses open to the insurer in cases such as this, among which lack of cooperation does not appear, but fraud or collusion between the judgment creditors and the insured is included. The two defenses are not synonymous. Lack of co-operation may include fraud or collusion or may consist simply of refusal to act.

"In the instant case, the defense is based on comparison between a statement made to an investigator by the insured and the testimony given by him in the trial of the tort cases, which it is alleged reveals inconsistencies and contradictions only to be accounted for by wrongful intent on the part of insured. If the evidence warranted such a conclusion, fraud or collusion would be proven. The giving by the insured of intentionaly false testimony, material in its nature and prejudicial in its effect, would be good ground for releasing the insurer from liability."

And on page 427 of 132 Me., on page 4 of 172 A., citing cases from Minnesota and Ohio, the court said:

"Considered in the light of the reported cases, in order to relieve the insurer from liability, the insured must have willfully misinformed the company concerning essential

---

2. This section, although in different words, is the same in meaning as § 262 which we are considering.

facts or in collusion with the plaintiff attempted to defraud the company by refusing to testify to the real facts of the accident or testifying falsely concerning them."

These dicta are not conclusive but they support the District Court's view with which we agree. And the fact that in Medico the court was considering fraud practiced by an insured upon his insurer after instead of before an accident is of no consequence. There is nothing in the statute to indicate any distinction between fraud practiced by an insured before an accident and fraud practiced by him afterward, and we can think of no reason for drawing any such distinction.

Further support for our view is found in the 1941 amendment of the Maine Financial Responsibility law. This statute, as originally enacted in 1927, three days after enactment of the first predecessor of the statute with which we are concerned, required that certain classes of drivers provide proof of their financial responsibility, *inter alia* in the form of a non-cancellable policy of liability insurance. In 1941 the statute was amended in various respects, one of which was to provide for the certification of policies issued under the statute and to make such policies subject to certain provisions. One of these provisions was almost identical with the provisions of § 261, supra, but, in spite of the inclusion of this provision, the Maine legislature saw fit to add:

"No statement made by the insured or on his behalf, and no violation of the terms of the policy shall operate to defeat or avoid the policy so as to bar recovery within the limit provided in the policy." R.S. Me.1944, c. 19, § 69, subd. 2, par. C.

The inclusion of this provision in the Financial Responsibility law, in addition to the inclusion therein of a provision similar to § 261, indicates that the legislature must have thought it necessary to supplement the general wording of § 261's counterpart in the Financial Responsibility law by stating specifically that no statement by an insured or violation by him of the terms of his policy shall operate to defeat or avoid it. This indicates that the legislature thought that the general language of § 261's counterpart, and hence by inference the language of § 261 itself, required supplementation to achieve the result contended for by the appellant. In the appellant Hall's view the latter provision in the Financial Responsibility law would be mere surplusage and quite unnecessary, and we do not assume that the legislature enacted an unnecessary provision.

The judgment of the District Court is affirmed; no costs.

MAGRUDER, Chief Judge (concurring).

At common law the insurance policy is merely a private contract between the insured and the insurer. If a judgment creditor of the insured finds that he can "reach and apply" an asset of the insured under the policy, that is merely the creditor's good luck. But the stream cannot rise higher than its source, and so the creditor cannot claim from the insurance company the proceeds of the policy if the insurance company has a good defense against the insured on the policy—say a defense of fraud or breach of condition.

Of course the legislature may, if it chooses, create a direct right in the judgment creditor against the insurer, which may not be defeated by defenses which would be good against the insured. As Judge Woodbury's opinion points out, the legislature of Maine did just that in its 1941 amendment to the Financial Responsibility Law, which is not applicable in the case at bar. But to achieve this result, the legislature must speak with a clearer voice than it did in §§ 261 and 262 of Chapter 56 of the Revised Statutes of Maine, 1944.